IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| George Porterfield, # 226071, ) | |
| ) | CIVIL ACTION NO. 9:13-0497-JMC-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Agency Director William R. Byars, Jr., ) | |
| Dr. John Tomarchio, and ) | |
| Warden Larry Cartledge, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action was filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on July 22, 2013. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on July 23, 2013, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendants' motion with attached affidavit on September 25, 2013, following which the Defendants filed a reply memorandum on October 1, 2013.



Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that the Defendants have been deliberately indifferent to his serious medical needs. Plaintiff alleges that on November 2, 2011 he was diagnosed with Hepatitis C and cirrhosis of the liver, and that he began receiving treatment at the Perry Correctional Institution (where he is housed) under the "existing protocol" which consisted of receiving a Pegasys injection once a week for one year. However, Plaintiff alleges that on May 6, 2012, he was advised by a "Ms. Burgess that the existing injection therapy was being stopped due to SCDC policy HS-18.15. Plaintiff alleges that this caused him "tremendous emotional distress". Plaintiff alleges that his condition was diagnosed by the Defendant Dr. Tomarchio, and that the denial of the treatment he was receiving constitutes deliberate indifference to his serious medical needs. Plaintiff seeks both monetary damages and injunctive relief.

Plaintiff has attached to his Complaint as exhibits copies of his grievance documents wherein Plaintiff complains about being taken off of his injection treatment and asserts that Dr. Tomarchio had "decided to take me off of treatment". Plaintiff also complains that he was taken off this treatment because of a disciplinary charge. The response (presumably from the Defendant Warden Cartledge, although the signature is illegible) reads as follows:

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). .



> I have reviewed your medical record and spoken with Dr. Elkins regarding your treatment. You will be getting some further laboratory testing within the next couple of months to see if the treatment you already had was sufficient to clear the virus from your body. If it has cleared, then you are considered cured. If not, you will be sent back to HCV Clinic for further evaluation.

See generally, Plaintiff's Verified Complaint, with attached Exhibits.

In support of summary judgment in the case, the Defendant John Tomarchio has submitted an affidavit wherein he attests that he is a physician licensed to practice medicine in South Carolina, employed by the SCDC as Medical Director. Dr. Tomarchio attests that as Medical Director he primarily has administrative responsibilities, one of which is to review and either approve or disapprove appointments for inmates with outside medical providers or medical procedures, nonformulary medications, and certain types of diagnostic tests. Dr. Tomarchio attests that, to the best of his knowledge, he has never personally examined the Plaintiff, but has reviewed his medical records.

Dr. Tomarchio attests that Plaintiff was seen by medical personnel in the spring of 2011 and that laboratory tests revealed he had elevated ALT and AST levels along with a Hepatitis C viral load of 10,307,000 IU/ML. Dr. Tomarchio attests that if an individual has a detectible viral load, the individual is determined to carry a diagnosed Hepatitis C infection. Dr. Tomarchio attests that while Hepatitis C is a potentially serious medical condition, not every individual who has Hepatitis C ever experiences any symptoms. In approximately twenty percent of the cases, the individual develops antibodies and the body eliminates the disease, while in another approximately sixty percent of the cases the individuals who have Hepatitis C carry the virus and have an elevated viral load but never experience any symptoms or liver damage from the disease. Dr. Tomarchio attests that only approximately twenty percent of people who have Hepatitis C are actually impacted

3



and require treatment. Dr. Tomarchio attests that the potential concern from Hepatitis C is its impact on the liver, as it can cause cirrhosis of the liver or liver cancer, although it is a disease which usually progressives very slowly over the course of many years, if at all.

Dr. Tomarchio attests that Plaintiff was seen by a gastroenterologist on July 28, 2011, who recommended the Plaintiff have an ultrasound guided biopsy of his liver, which was performed in September 2011. Pathology from the liver biopsy revealed that Plaintiff had Stage II fibrosis and Grade II inflamation of the liver. Dr. Tomarchio attests that individuals with this condition do not have severe damage to their liver. Rather, liver function at this stage may be normal, and the disease may progress slowly over the course of many years or not at all. Dr. Tomarchio further attests that individuals with Hepatitis C and Stage II liver fibrosis and Grade II liver inflamation do not necessarily require any type of treatment. Here, however, the gastroenterologist recommended a treatment regimen for the Plaintiff.

Dr. Tomarchio attests that most practitioners would not recommend therapy to patients with this stage of Hepatitis C, this being a judgment call, because current treatments for Hepatitis C can be very difficult on the patient, can cause worsening of other medical conditions, and can also greatly exacerbate psychiatric conditions such as depression and can actually lead to suicide. Dr. Tomarchio attests that the current treatment regimen for Hepatitis C is analogous to an individual receiving chemotherapy, and can cause the patient to become very sick. While this does not occur in all patients, many patients experience severe flu like symptoms during the entire time they receive treatment. Nevertheless, Dr. Tomarchio attests that Dr. Thomas Moore, the former SCDC Medical Director, approved the gastroenterologist's recommendation, and Plaintiff began treatment for Hepatitis C in November 2011. Plaintiff's treatment consisted of weekly injections of Pegasys and



Riboviran, and Plaintiff continued to receive these weekly injections until May 2012.

Dr. Tomarchio attests that on April 26, 2012, medical personnel at PCI sent in a request for a renewal of Plaintiff's prescription. Dr. Tomarchio attests that at that time he was working with Dr. Moore as an assistant (Dr. Tomarchio did not take over as Medical Director until May 2012), and that after receiving this request he checked Plaintiff's records to review his condition. Dr. Tomarchio attests that in determining whether it is appropriate for an individual to continue treatment for Hepatitis C, he generally looks to see if the individual has any medical problems that may be exacerbated by the treatment, reviews his psychiatric history to determine if the patient has been stable from a psychiatric standpoint, looks at the length of time the individual has remaining on his sentence, and looks to see whether the individual has had any type of contraband charges for possession of a controlled substance while in the SCDC. With respect to this last factor, Dr. Tomarchio attests the concern is that if an individual is consuming alcohol or taking any type of drugs or unprescribed prescription medication, this can cause serious medical concerns with the Hepatitis C treatment.

Dr. Tomarchio attests his review revealed that Plaintiff had received a contraband charge for possession of tobacco, which is a controlled substance in the SCDC. Dr. Tomarchio attests that it is recommended that individuals not use tobacco while receiving treatment for Hepatitis C, and that this charge also raised a concern that Plaintiff may not be as likely to be compliant with his treatment. Dr. Tomarchio also noted that Plaintiff had informed medical personnel he had a prior substantial substance abuse history including alcohol, crack cocaine, and marijuana. Dr. Tomarchio attests that Plaintiff's history along with the contraband charge raised concerns that Plaintiff could potentially be involved with other substances that would have a negative effect on his health when



combined with Hepatitis C treatment. Dr. Tomarchio also attests that the treatment for Hepatitis C is generally twenty-four to forty-eight weeks, and that by this time Plaintiff had been receiving treatment for almost twenty-seven weeks. Plaintiff also had several additional weeks left on his prior prescription before he would need his new prescription. Dr. Tomarchio attests that he therefor consulted with Dr. Moore, and the decision was made not to continue treatment at that time due to Plaintiff's past substance abuse history and contraband charge. Additionally, Plaintiff's viral load was checked on May 2, 2012, and was undetectable. Therefore, it appeared that Plaintiff's Hepatitis C had been eliminated and Plaintiff had been cured. Dr. Tomarchio attests that had Plaintiff had an elevated viral load in May 2012, as he did in April 2011, he would have continued Plaintiff's treatment, but that since Plaintiff no longer had a detectible viral load, in his opinion it was appropriate to discontinue Plaintiff's treatment at that time.

Dr. Tomarchio attests that there are essentially two schools of thought concerning treatment of Hepatitis C where an individual has an undetectable viral load, one of which is to continue treatment to attempt to irradicate any remaining elements of the virus that may still exist, while the other is to discontinue treatment due to the potential harm to the patient from the treatment itself. Dr. Tomarchio attests that the second factor is an even greater concern where the individual has a history of substance abuse, as did the Plaintiff. Dr. Tomarchio attests that based on Plaintiff's history and in light of his current contraband charge, in his opinion it was appropriate to discontinue Plaintiff's treatment in May 2012. Dr. Tomarchio attests that he also personally consulted with the gastroenterologist concerning this matter, and that the decision was made to recheck Plaintiff's viral load in six months and determine how to proceed at that time based on the results.

Dr. Tomarchio attests that it is common for Hepatitis C to come back after treatment

6



is completed, with the condition reoccurring or coming back in fifty to sixty percent of patients even if they complete a full forty-eight weeks of treatment. Dr. Tomarchio attests that when Plaintiff's viral load was checked again in November 2012, it was again elevated, following which he approved a request by medical personnel at the prison for Plaintiff to be seen by a gastroenterologist for consultation. The gastroenterologist stated that Plaintiff would be placed in the January Hepatitis C clinic, and was scheduled to be seen in January 2013. Dr. Tomarchio attests that, as this disease progresses very slowly and as the Plaintiff was noted to be at Stage II, this would not be an emergent condition and the gastroenterology clinic stated that he could be evaluated in January.

Dr. Tomarchio attests that Plaintiff was scheduled to be seen on January 22, 2013, but that by that time Plaintiff had been placed in lockup and was unable to keep that appointment because of transportation issues. Dr. Tomarchio attests that Plaintiff was rescheduled to be seen at the gastroenterology clinic on March 12, 2013; however, he refused to go to the appointment at that time. Plaintiff's appointment was therefore rescheduled for April 19, 2013, at which time the gastroenterologist recommended an ultrasound of the abdomen and that Plaintiff restart Pegasys and Riboviran and also Telapavir. Dr. Tomarchio attests that he approved these recommendations, and Plaintiff began this treatment on April 29, 2013.

Dr. Tomarchio attests that Plaintiff received appropriate treatment for his Hepatitis C, that his original treatment regimen was discontinued after he was found to have an undetectable viral load, and that after the disease was thereafter found to have reoccurred (which happens in fifty to sixty percent of cases) Plaintiff's treatment recommendations from the gastroenterologist were approved and Plaintiff is receiving that treatment. Dr. Tomarchio further attests that, in his opinion, Plaintiff has not experienced any harm of any kind by virtue of his treatment being discontinued in

7



May 2012. Dr. Tomarchio further notes that individuals with Stage II Hepatitis do not have damage to their liver function, that based on his review of Plaintiff's records Plaintiff has only some mild inflamation of the liver, and that in his opinion Plaintiff does not have a serious medical condition at this point. Dr. Tomarchio attests that he has at all times acted in accordance with generally accepted medical practices, and that Plaintiff has been provided proper medical care. See generally, Tomarchio Affidavit. Along with Tomarchio's affidavit, the Defendants have also submitted a copy of Plaintiff's medical records setting forth his course of care and treatment. See generally Pridgen Affidavit, with attached exhibits [Medical Records].

The Defendant Larry Cartledge has submitted an affidavit wherein he attests that he is the Warden at the Perry Correctional Institution, and that while it was possible that Plaintiff wrote to him or that he spoke with the Plaintiff at some point, he has no recollection of speaking with the Plaintiff or receiving any correspondence from Plaintiff concerning the medical care he was provided. Cartledge further attests that he is not directly involved in the medical care of inmates and has no first hand knowledge concerning the medical care provided to the Plaintiff. Cartledge attests that if he receives a Request to Staff from an inmate concerning his medical care, he generally refers the inmate to the medical department. Cartledge attests that he does not have any advanced medical training and relies on the expertise of trained medical personnel to provide medical care to inmates, that he does not overrule their medical judgments, and that it is his understanding that Plaintiff has received appropriate medical care while at the Perry Correctional Institution. See generally, Cartledge Affidavit.

Finally, the Defendant William Byars has submitted an affidavit wherein he attests that he is the Director of the SCDC, that his office is located in Columbia, and that he does not have



any involvement with or first hand knowledge of the Plaintiff's medical care. Byars attests that he does not have any direct involvement in the medical care and treatment of inmates, that he has no personal recollection of receiving any inmate requests or correspondence from the Plaintiff concerning his medical care, and that he relies on the medical providers at each institution to provide medical care for inmates. Byars attests that he has no advanced medical training, relies on the expertise of trained medical personnel to provide medical care, does not overrule their medical judgments, and does not become involved in medical decisions or in the day to day medical care of inmates. See generally, Byars Affidavit.

As an attachment to his response in opposition to summary judgment, Plaintiff has submitted an affidavit wherein he "attests" that his condition is a serious medical need and that his treatment should not have been stopped because of a disciplinary charge for tobacco use. Plaintiff further attests that Byars and Cartledge could have overruled Tomarchio's decision and that they "[knew] that tobacco is not a controlled substance to stop treatment of Hepatitis C". See generally, Plaintiff's Affidavit.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d



872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

In order to proceed with a claim for denial of medical care as a constitutional violation, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such evidence. Rather, the evidence before this Court shows that Plaintiff received continuous and ongoing treatment for his medical condition. The evidence shows that Plaintiff was regularly seen (not just for the medical complaint alleged in this lawsuit, but for various other medical problems as well) by nurses, nurse practitioners, and doctors. He also received medical tests and evaluations, the results of which were discussed with him, and he was prescribed medications. See generally, Medical Records (attached to Pridgen Affidavit).

With respect to the medical care Plaintiff received for his Hepatitis C condition, Dr.



10

Tomarchio (a licenced physician) has submitted an affidavit attesting to the care Plaintiff received, and that such care met (and continues to meet) the applicable medical standard of care. The attached copies of Plaintiff's medical records also reflect his frequent access to, and evaluation by, medical personnel for his Hepatitis C condition. None of this medical evidence shows that any named Defendant[3] was deliberately indifferent to Plaintiff's serious medical needs. Rather, Plaintiff simply disagrees with the care he was provided. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

  In contrast to the Defendants' evidence from a licensed medical professional as well as Plaintiff's medical records, Plaintiff only generally alleges in his Complaint that medical personnel, and in particular the Defendant Dr. Tomarchio, refused to provide him the treatment he desired. Plaintiff's lay opinion that he should have received a different treatment regimen than the course of treatment prescribed and approved by medical professionals is not sufficient to allow this claim to proceed. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing

---

[3]With respect to the non-medical personnel Defendants (Cartledge and Byars), these Defendants were entitled to rely on the expertise of the medical professionals charged with providing medical care to the Plaintiff as an inmate at PCI. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel]. Therefore, even if Plaintiff's claim against Dr. Tomarchio was to proceed, these two Defendants would be entitled to summary judgment.



11

O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]). Plaintiff has provided no medical evidence to show that the treatment regimen ordered or approved by Dr. Tomarchio has resulted in medical harm to him, and while Plaintiff may not agree with the extent and nature of the medical care he received, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents and evidence which refute his claims. See House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Levy, No. 96-4705, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837 (1994).

      Plaintiff may, of course, pursue a claim in state court if he believes the medical care he received was inadequate. However, that is not a basis for proceeding with his claim in this Court. Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. The evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs, the standard for a *constitutional claim*, and therefore Plaintiff's federal § 1983 medical claim



should be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 11, 2013
Charleston, South Carolina



13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

