# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| George Porterfield, ) | |
| ) | Civil Action No. 9:13-cv-00497-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| Agency Director William R. Byars, Jr., Dr. ) | |
| John Tomarchio, Warden Larry Cartledge, ) | |
| ) | |
| Defendants. ) | |
| ) | |

On February 25, 2013, *pro se* Plaintiff George Porterfield ("Plaintiff") filed this 42 U.S.C. § 1983 action (ECF No. 1) alleging that Defendants violated the Eighth Amendment by discontinuing his treatment for liver disease. *Id.* at 3–4. Plaintiff has been granted leave to proceed *in forma pauperis* in this matter. (ECF No. 2). This matter is now before the court upon the magistrate judge's Report and Recommendation ("Report"), filed October 11, 2013. (ECF No. 27). The Report recommended that the court grant Defendants Agency Director William R. Byars, Jr., Dr. John Tomarchio, and Warden Larry Cartledge's (collectively referred to as "Defendants") motion for summary judgment (ECF No. 17).

For the reasons stated herein, the court **ACCEPTS** the magistrate judge's Report. The court therefore **GRANTS** Defendants' motion for summary judgment and **DISMISSES** Plaintiff's complaint. The court further **DENIES AS MOOT** Plaintiff's motions for the appointment of counsel (ECF Nos. 34, 43).

## FACTUAL AND PROCEDURAL BACKGROUND

The court concludes upon its own careful review of the record that the procedural summation in the magistrate judge's Report is accurate, and the court adopts this summary as its

1

own. However, a recitation of the relevant facts, in a light most favorable to Plaintiff, is warranted.

Plaintiff is currently incarcerated at the Perry Correctional Institution ("PCI"), a facility managed by the South Carolina Department of Corrections ("SCDC"). (ECF No. 1 at 2). Prior to March 29, 2011, Plaintiff was incarcerated at the Broad River Correctional Institution ("BRCI"), also managed by SCDC. (*See* ECF No. 17-6 at 73). In the fall of 2010, medical personnel at BRCI noticed that Plaintiff had elevated alanine aminotransferase ("ALT")[1] and aspartate aminotransferase ("AST")[2] levels, indicating that Plaintiff's liver was damaged or diseased. (ECF No. 17-6 at 84; ECF No. 17-10 at 39). In the spring of 2011, medical personnel at PCI conducted laboratory tests which reiterated that Plaintiff had elevated ALT and AST levels and also revealed that Plaintiff had an elevated viral load[3]. (ECF No. 17-1 at 4, 7).

In July of 2011, Plaintiff was evaluated by gastroenterologist Dr. Elkins[4] who diagnosed Plaintiff with chronic Hepatitis C and recommended that Plaintiff undergo an ultrasound-guided biopsy of his liver. (ECF No. 17-10 at 31; ECF No. 17-1 at 5). Shortly thereafter, Dr. Elkins recommended a treatment regimen whereby Plaintiff would receive a weekly injection of the prescription medication Pegasys. (ECF No. 17-1 at 5; *see* ECF No. 17-6 at 49, 57; ECF No. 17-7 at 79). Dr. Elkins also placed Plaintiff on the prescription medication Ribavirin. (ECF No. 17-6 at 57). Dr. Elkins recommended that Plaintiff be placed on this treatment plan for one year.[5]

---

[1] "Elevated alanine aminotransferase in the blood is indicative of liver damage." 1 J.E. Schmidt, M.D., *Attorneys' Dictionary of Medicine* A-207, (Matthew Bender).

[2] The measurement of aspartate aminotransferase assists the diagnosis and monitoring of liver disease. *Id.* at A-563.

[3] The viral load measures the amount of virus in the blood. 6 J.E. Schmidt, M.D., *Attorneys' Dictionary of Medicine* V-111, (Matthew Bender).

[4] It appears that Dr. Elkins was an outside medical provider not directly employed by SCDC. (*See* ECF No. 17-10 at 31).

[5] This allegation by Plaintiff is unrebutted by Defendants.

(ECF No. 1 at 3; ECF No. 1-1 at 1; ECF No. 33 at 1).  Plaintiff began the treatment plan in November 2011.  (ECF No. 17-1 at 6).

On April 26, 2012, PCI medical personnel requested that Plaintiff's prescriptions for Pegasys and Ribavirin be renewed.  (ECF No. 17-1 at 6; ECF No. 17-6 at 37–38).  Defendant Dr. Tomarchio[6] declined to renew Plaintiff's prescription, citing as his reasoning a tobacco charge Plaintiff had incurred.  (ECF No. 17-6 at 37–38).  Defendant Dr. Tomarchio attests that on May 2, 2012, Plaintiff's viral load was found to be undetectable leading Defendant Dr. Tomarchio to believe that Plaintiff's Hepatitis C had been eliminated and that discontinuing treatment was appropriate at that time.[7]  (ECF No. 17-2 at 4).  Plaintiff's Pegasys injections were discontinued around May 7, 2012.  (ECF No. 1 at 4; ECF No. 17-6 at 37).  Dr. Elkins disagreed with the discontinuance of Plaintiff's treatment and recommended that Plaintiff's regimen of Pegasys and Ribavirin continue.  (ECF No. 17-6 at 36).

On May 18, 2012, Plaintiff submitted a step one grievance in which he requested the continuance of his liver disease treatment.  (ECF No. 1-1 at 3).  On July 26, 2012, Defendant Warden Cartledge responded to Plaintiff's grievance; however, the court was not provided with that response.  (*See* ECF No. 1-1 at 3).  On August 31, 2012, Plaintiff submitted a step two grievance explaining that he never received a disciplinary finding for tobacco possession in prison.  (ECF No. 1-1 at 2).  Plaintiff further stated that his gastroenterologist informed him that he needed to remain on medication in order to prevent a relapse of his liver disease.  *Id.*  An

---

[6] Defendant Dr. Tomarchio is a general practitioner who became the medical director for SCDC in May 2012.  (ECF No. 17-2 at 1, 3).  Defendant Dr. Tomarchio has never personally examined Plaintiff but has reviewed Plaintiff's medical records.  *Id.* at 1.  At the time that Dr. Tomarchio declined Plaintiff's prescription renewal in April 2012, he was an employee of SCDC but had not yet assumed the position of medical director.  *Id.* at 3.  Nonetheless, Dr. Tomarchio indicates that he made the decision to discontinue Plaintiff's medication regimen.  *Id.* at 3–5.

[7] Defendant Dr. Tomarchio's statement regarding an undetectable viral load may be supported by medical records provided to the court.  (*See* ECF No. 17-9 at 7, 9).

3

SCDC official responded to Plaintiff's second grievance on October 12, 2012, notifying Plaintiff that he would be tested in the coming months to determine whether the virus was cleared from Plaintiff's body. *Id.* The response also indicated that if at that time the virus had not cleared, Plaintiff would be placed back in the Hepatitis C virus clinic. *Id.*

On November 2, 2012, medical personnel found that Plaintiff's Hepatitis C viral loads were high and accordingly instructed Plaintiff that he would be restarting his treatment. (ECF No. 17-6 at 27). On November 7, 2012, a message was sent to the specialty clinic at the Kirkland Correctional Institution ("KCI") to schedule Plaintiff for the gastroenterology clinic as soon as possible. (ECF No. 17-6 at 26). Plaintiff was scheduled to be seen by the gastroenterology clinic on January 22, 2013; however, on that day, Plaintiff was housed in lock-up as a result of an altercation with his roommate. (ECF No. 17-6 at 9, 18). Due to an issue with transportation, Plaintiff was not able to attend his appointment. (ECF No. 17-1 at 8). Plaintiff's appointment was rescheduled for March 12, 2013. *Id.* However, on that day, Plaintiff was scheduled for another medical appointment to address his cold, and he signed a refusal form indicating his intent to reschedule his gastroenterology appointment. (ECF No. 17-1 at 8–9; ECF No. 17-6 at 11). On April 19, 2013, Plaintiff was seen by Dr. Elkins who recommended that Plaintiff be placed back on Pegasys and Ribavirin. (ECF No. 17-1 at 9). Defendant Dr. Tomarchio approved the gastroenterologist's recommendation, and Plaintiff restarted his liver disease treatment on April 29, 2013. *Id.*

## STANDARD OF REVIEW

The magistrate judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The

responsibility to make a final determination remains with this court. *See Mathews v. Weber,* 423 U.S. 261, 270-71 (1976).  The court is charged with making a de novo determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the magistrate judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce,* 727 F.2d 91, 94 & n.4 (4th Cir. 1984).  In the absence of specific objections to the magistrate judge's Report, this court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis,* 718 F.2d 198, 199 (4th Cir. 1983).

### **Summary Judgment**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).  In ruling on a motion for summary judgment, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the

district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *See Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

As Plaintiff is a *pro se* litigant, the court is required to liberally construe his arguments. *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978). The court addresses those arguments that, under the mandated liberal construction, it has reasonably found to state a claim. *Barnett v. Hargett,* 174 F.3d 1128, 1133 (10th Cir. 1999).

**Defendants' Motion for Summary Judgment**

Plaintiff claims that Defendants' discontinuance of his Hepatitis C treatment violated the Eighth Amendment. (ECF No. 1 at 3–4). To establish an Eighth Amendment violation, Plaintiff must show that Defendants committed acts or omissions sufficiently harmful to demonstrate deliberate indifference for Plaintiff's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Specifically, Plaintiff must satisfy two elements: (1) that he suffered an objectively serious deprivation or injury and (2) that the prison officials were deliberately indifferent to Plaintiff's need. *Adams v. Sw. Virginia Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013). The first component is satisfied by a serious medical condition. *Hall v. Holsmith*, 340 F. App'x

944, 947 (4th Cir. 2009). The second component may be established by a delay in treatment "if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Abraham v. McDonald*, 493 F. App'x 465, 466–67 (4th Cir. 2012) (internal quotation marks and citation omitted).

On October 11, 2013, the magistrate judge issued the Report, which concluded that Plaintiff did not establish the second element of his claim: deliberate indifference. The Report stated that Plaintiff received continuous and ongoing treatment for his medical condition. (ECF No. 27 at 10). The magistrate judge found that Plaintiff's medical records indicated Plaintiff had frequent access and evaluation from medical personnel with regard to his liver disease. *Id.* at 11. The Report further stated that Plaintiff has merely shown a disagreement with Defendant Tomarchio's provision of care which is insufficient to establish deliberate indifference. *Id.* at 11. Additionally, the magistrate judge concluded that Defendants Cartledge and Byars were not deliberately indifferent because they were entitled to rely on the expertise of medical personnel. *Id.* at 11 n.3 (citing *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)).

Plaintiff filed Objections to the Report ("Objections") on November 18, 2013.[8] (ECF No. 33). In his Objections, Plaintiff argues Defendants were deliberately indifferent to his medical

---

[8] In his Objections, Plaintiff presents information from a medical handbook about liver disease. (ECF No. 33-1 at 19–21). Plaintiff states that this information constitutes an "expert opinion." (ECF No. 33 at 2–3). The court finds that the medical information Plaintiff details in his argument (most notably that treatment for Hepatitis C should span one year or longer) is not evident in the material Plaintiff provided to the court. (*Compare* ECF No. 33 at 2–3 *with* ECF No. 33-1 at 19–21). In their reply to Plaintiff's Objections (ECF No. 36), Defendants contend that the article Plaintiff submitted should not be considered by the court as it is not admissible evidence. *Id.* at 1. To the extent Plaintiff has submitted the information from the medical handbook to establish that Hepatitis C is a serious medical condition, the court does not rely on Plaintiff's article to reach this determination but instead is satisfied of this fact independently. Insofar as Plaintiff has presented the article to challenge Defendant Dr. Tomarchio's assertion

needs because Plaintiff's gastroenterologist Dr. Elkins recommended that Plaintiff stay on Hepatitis C medication for one year. *Id.* at 1. Plaintiff states that Defendant Dr. Tomarchio, as a general practitioner, should not have interfered with the treatment regimen recommended by a specialist, and Defendant Cartledge should have relied on the gastroenterologist's opinion and not that of Dr. Tomarchio. *Id.* at 2–4. Plaintiff also contends that Defendant Dr. Tomarchio's decision to send Plaintiff back to Dr. Elkins and to reapprove Plaintiff's treatment plan, following Plaintiff's complaints, indicates that Defendant Dr. Tomarchio's initial decision to discontinue Plaintiff's medicine was wrongful. *Id.* at 4. Plaintiff further states that the decision to take Plaintiff off his medical regimen due to a tobacco charge was frivolous. *Id.* at 1–2.

The court finds that the record viewed in the light most favorable to Plaintiff permits the conclusion that Defendant Dr. Tomarchio overrode the recommendation of Plaintiff's treating specialist by discontinuing Plaintiff's medication prior to the treatment plan's completion. The court also finds that a reasonable juror could conclude that Dr. Tomarchio's decision to discontinue Plaintiff's treatment plan due to a tobacco charge which did not lead to a disciplinary finding was without sufficient justification. Notwithstanding these permissible inferences, the court finds Defendants' actions or omissions do not constitute deliberate indifference under the Eighth Amendment, and therefore, Plaintiff's claim fails as a matter of law.

Although Plaintiff's liver treatment was delayed, Defendants approved the reinstatement of Plaintiff's treatment within one year.[9] The Fourth Circuit has held that "a significant delay in the treatment of a serious medical condition may, in the proper circumstances, indicate an Eighth

---

that treatment for Hepatitis C generally spans from six months to one year (*See* ECF No. 17-2 at 4), the court finds that Plaintiff's article does not offer an opinion in that regard. Therefore, the court does not rely on Plaintiff's article in reaching its ultimate conclusion in this action.

[9] Plaintiff's treatment plan was discontinued around May 7, 2012 and restarted on April 29, 2013. (ECF No. 1 at 4; ECF No. 17-6 at 37; ECF No. 17-1 at 9).

Amendment violation." *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008). However, a violation only occurs where "the delay results in some substantial harm to the patient." *Id.* Therefore, in order to survive summary judgment, Plaintiff is required to show that the year-long discontinuance of his liver treatment resulted in substantial harm such as, severe pain or the further deterioration of the health of his liver. *See id.* at 167 ("[I]n order to defeat summary judgment on the delay issue, [Plaintiff] was obligated to establish that the delay in his surgery caused him substantial harm-evidenced by, for example, a marked increase in his hernia's size, frequent complaints of severe pain, or signs that his hernia was becoming non-reducible or incarcerated.").

Plaintiff has not shown that he was substantially harmed by the discontinuance of his Hepatitis C treatment regimen. Plaintiff has not presented any evidence of a decline in the health of his liver as a result of the delay in treatment nor has he alleged that he endured any physical suffering. To the contrary, Defendant Dr. Tomarchio asserted that on May 2, 2012, Plaintiff's viral load was found to be undetectable, suggesting that Plaintiff's health had improved. Furthermore, when Plaintiff submitted grievances to prison officials requesting that his treatment plan be reinstated, the prison staff responded that Plaintiff would be tested to determine if further treatment was necessary. The prison officials followed through on that commitment. When testing revealed that Plaintiff's viral loads were once again elevated, Plaintiff was placed back on his treatment plan. The court notes that nearly five months passed between the discovery that Plaintiff's viral loads were once again elevated and the reinstatement of Plaintiff's treatment. However, the record indicates that the prison officials were sufficiently diligent in navigating the administrative hurdles that arose as they attempted to arrange Plaintiff's appointment with the gastroenterologist and to place Plaintiff back on his medication.

Therefore, the court finds that no genuine issue exists as to whether Defendants were deliberately indifferent to Plaintiff's Hepatitis C. For that reason, Defendants are entitled to summary judgment.

**Plaintiff's Motions for the Appointment of Counsel**

On August 6, 2013, Plaintiff moved for the appointment of counsel. (ECF No. 21). The magistrate judge denied Plaintiff's motion on August 8, 2013. (ECF No. 22). Plaintiff has since filed two motions for the appointment of counsel that are currently pending before the court. (ECF Nos. 34, 43). The court finds that Plaintiff's motions are now moot given the findings of the instant order and the dismissal of this action. Therefore, Plaintiff's motions are denied.[10]

## CONCLUSION

Based on the aforementioned reasons and after a thorough review of the Report and the record in this case, the court **ACCEPTS** the magistrate judge's Report and Recommendation (ECF No. 27). The court **GRANTS** Defendants' motion for summary judgment (ECF No. 17), thereby **DISMISSING** with prejudice Plaintiff's action. Accordingly, the court **DENIES AS MOOT** Plaintiff's motions for the appointment of counsel (ECF Nos. 34, 43).

**IT IS SO ORDERED.**

---

[10] The court finds it appropriate to briefly address an allegation by Plaintiff in his pending motions that a disability has prevented him from adequately asserting his claim. (*See* ECF No. 34 at 1; ECF No. 43 at 2). Even if the court were to consider Plaintiff's motions on the merits, it would not find that Plaintiff's allegation of disability, at such a late date in this action, warrants the appointment of counsel. Plaintiff alleged his disability for the first time in his second motion to appoint counsel filed November 18, 2013. (ECF No. 34). This was the same date that Plaintiff filed his Objections to the Report. (*See* ECF No. 33). The court finds that Plaintiff's presentation of his claim throughout this action combined with the safeguard of the mandated liberal construction for *pro se* litigants, *see Gordon*, 574 F.2d at 1151, has allowed the court to address the substance of Plaintiff's claim. Moreover, Defendants have provided a wealth of objective evidence regarding Plaintiff's medical treatment which the court has thoroughly reviewed and construed in the light most favorable to Plaintiff.

*J. Michelle Childs*

United States District Judge

February 27, 2014
Greenville, South Carolina

11